IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00119-WYD-MJW

ST. JUDE MEDICAL S.C., INC.,

Plaintiff,

v.

SORIN CRM USA, INC. and
SORIN GROUP USA, INC.,

Defendants.

**ORDER REGARDING**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO**
**SUBPOENAS (Docket No. 1)**

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before the court on Plaintiff's Motion to Compel Production of Documents Responsive to Subpoenas (docket no. 1). The court has reviewed the subject motion (docket no. 1), the response (docket no. 5), and the reply (docket no. 13). In addition, the court has taken judicial notice of the court's file and has considered applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings of fact, conclusions of law and order.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The court finds:

1. That I have jurisdiction over the subject matter and over the parties to this lawsuit. See Fed. R. Civ. P. 45(d)(2)(B)(i);

2. That venue is proper in the state and District of Colorado;

2

3. That each party has been given a fair and adequate opportunity to be heard;

4. That the subject motion (docket no. 1) involves a dispute over whether Non-Parties Sorin CRM USA, Inc. and Sorin Group USA, Inc. [hereinafter "Sorin"] should be required to respond to a subpoenas duces tecum (docket nos. 1-1 and 1-2) that were issued through the United States District for the District of Colorado and served upon Non-Parties Sorin CRM USA, Inc. and Sorin Group USA, Inc. by Plaintiff St. Jude Medical S.C., Inc. [hereinafter "St. Jude"]. These two subpoenas duces tecum (docket nos. 1-1 and 1-2) seek the following documents:

(1) Any and all Biotronik CRM Product Agreements between ELA/Sorin and Biotronik presently in effect, or that was ever in effect at any time from January 1, 2006 to the present.

(2) All agreements between ELA/Sorin and Biotronik that relate to any Biotronik CRM Product Agreement between ELA/Sorin and Biotronik.

(3) Any and all press releases, or marketing or promotional materials, ever issued by ELA/Sorin that relate to any Biotronik CRM Product Agreement between ELA/Sorin and Biotronik, or which relate to the sale of Biotronik CRM products by ELA/Sorin whether under any Biotronik or ELA/Sorin's brand name or trademark.

3

(4) Any and all press releases, or marketing or promotional materials, ever issued by ELA/Sorin that relate to any Biotronik CRM Product manufactured for, or otherwise supplied to ELA/Sorin.

(5) All communications between (a) ELA/Sorin (including any representative or attorney of ELA/Sorin) and (b) Biotronik (including any representative or attorney of Biotronik) relating to any Biotronik CRM Product Agreement between ELA/Sorin and Biotronik.

(6) All communications between (a) ELA/Sorin (including any representative or attorney of ELA/Sorin) and (b) Biotronik (including any representative or attorney of Biotronik) relating to any Biotronik CRM Product manufactured for, or otherwise supplied to, ELA/Sorin.

(7) All communications between (a) ELA/Sorin (including any representative or attorney of ELA/Sorin) and (b) any actual or potential CRM customer and/or CRM hospital account (including any representative or counsel of such actual or potential CRM customer and/or CRM hospital account) relating to any Biotronik CRM Product Agreement between ELA/Sorin and Biotronik.

(8) All communications between (a) ELA/Sorin (including any representative or attorney of ELA/Sorin) and (b) any actual

4

or potential CRM customer and/or CRM hospital account (including any representative or counsel of such actual or potential CRM customer and/or CRM hospital account) relating to any Biotronik CRM Product.

(9) All communications between (a) ELA/Sorin (including any representative or attorney of ELA/Sorin) and (b) Biotronik (including any representative or attorney of Biotronik) relating to, referencing or providing copies of any communications or approvals from the U.S. Food & Drug Administration (the "FDA") or any equivalent foreign regulatory agency, relating to the ability to sell any Biotronik CRM Product in the United States, including, but not limited to, communications related to premarket approval, post-market monitoring, regulations and/or oversight as to any Biotronik CRM Product manufactured for, or otherwise supplied to, ELA/Sorin.

(10) All communications between (a) ELA/Sorin (including any representative or attorney of ELA/Sorin) and (b) the FDA (including any representative or attorney of the FDA) relating to any Biotronik CRM Product Agreement between ELA/Sorin and Biotronik.

(11) All communications between (a) ELA/Sorin (including any representative or attorney of ELA/Sorin) and (b) the FDA

(including any representative or attorney of the FDA) relating to any Biotronik CRM Product.

(12) All documents that ELA/Sorin received from Biotronik relating to sales of, marketing of or support for any Biotronik CRM Product manufactured for, or otherwise supplied to, ELA/Sorin.

(13) Samples of each Biotronik CRM Product ever manufactured for, or otherwise supplied to, ELA/Sorin.

(14) Representative samples of each label for each Biotronik CRM Product ever manufactured for, or otherwise supplied to, ELA/Sorin.

(15) Representative samples of each package for each Biotronik CRM Product ever manufactured for, or otherwise supplied to, ELA/Sorin.

(16) Representative samples of each user manual associated with any Biotronik CRM Product ever manufactured for, or otherwise supplied to, ELA/Sorin.

(17) Representative samples of each physician's manual that ELA/Sorin ever provided with, or in relation to, any Biotronik CRM Product sold or offered for sale by ELA/Sorin.

(18) Copies of all complaints, communications, papers, pleadings claims or lawsuits relating to any Biotronik CRM Product sold or offered for sale by ELA/Sorin.

6

(19) Any communication by any ELA/Sorin's agent, employee or sales representative relating to ELA/Sorin's sale or marketing of any Biotronik CRM Product.

(20) Any sales or marketing analysis or forecast by any ELA/Sorin's agent, employee or sales representative relating to ELA/Sorin's sale or marketing of any Biotronik CRM Product.

5. That St. Jude argues in the subject motion (docket no. 1) that it is entitled to all of the information requested in the above subpoenas duces tecum (docket no. 1-1 and 1-2). In support of the subject motion (docket no. 1), St. Jude makes the following arguments.

First, St. Jude argues that the documents requested in the subpoenas duces tecum (docket nos. 1-1 and 1-2) are relevant to the main lawsuit filed in the United States District Court for the Southern District of Florida - Miami Division <u>JMA, Inc., a Florida corporation et al. v. Biotronik, Inc.</u>, case no. 12-cv-23466-Seitz/Simonton. In particular, St. Jude argues that the documents requested in the subpoenas duces tecum (docket nos. 1-1 and 1-2) are relevant to: (a) the OEM program where Sorin and Biotronik, Inc. were involved. These contractual documents establishing the OEM program are directly relevant to the underlying litigation [12-cv-23466-Seitz/Simonton] as they will show not only the parties

involved in the program but will also shed light as to the role played by Biotronik, Inc. U.S.; (b) whether Biotronik, Inc. U.S. personnel or affiliates provided marketing, servicing, and support for the products. Moreover, such information is relevant to damages suffered by LaPadula and Mathison that resulted in OEM sales within their territories and to their accounts; (c) that the marketing materials are relevant to show that Sorin may have used name recognition associated with the Biotronik, Inc. U.S. leads to sell leads that should have gone to Plaintiffs/Counterclaim Defendants; and (d) that information concerning the sales and marketing of the Biotronik, Inc. U.S. products, as well as the servicing of the products by Biotronik, Inc. U.S. personnel, will also provide relevant evidence as to its involvement and promotion of the OEM program.

Second, St. Jude argues that the subpoenas duces tecum (docket nos. 1-1 and 1-2) are the only way for St. Jude to obtain the relevant documents and information it needs since in the underlying lawsuit [12-cv-23466-Seitz/Simonton] Biotronik, Inc. U.S. claims to not have care, custody, access, and control of such documents requested in the subpoenas duces tecum (docket nos. 1-1 and 1-2). See paragraph 6 below.

Third, St. Jude argues that the breath and temporal scope of the

8

requested documents outlined in their subpoenas duces tecum (docket nos. 1-1 and 1-2) is limited to relevant materials only. St. Jude is only seeking materials related to the OEM program at issue. That St. Jude has agreed to limit the time frame and geographic scope by (a) agreeing to limit its discovery requests to documents generated between January 1, 2006 (i.e., the effective date of the earlier of the two representative agreements that are the subject of the underlying lawsuit United States District Court for the Southern District of Florida - Miami Division <u>JMA, Inc., a Florida corporation et al. v. Biotronik, Inc.</u>, case no. 12-cv-23466-Seitz/Simonton) to the present and (b) agreeing to limit its discovery requests to Sorin's data as to resale of OEM products in the United States, and to resales in Florida, which is where the St. Jude's sales representatives sold for Biotronik Inc. U.S. before Biotronik, Inc. U.S. terminated their agreements on September 21, 2012. St. Jude is also agreeable to either representative samples or even pictures where appropriate.

Fourth, St. Jude argues that the information sought is relevant on the issue of whether the Biotronik Inc. U.S. OEM equipment program breached or interfered with LaPadula and Mathison's rights under the representative agreements.

9

Lastly, St. Jude argues that the reduced scope of their request of documents makes such request not unreasonable or overly burdensome to Sorin.

6. That Sorin argues that the information requested in the subpoenas duces tecum is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. In addition, Sorin argues that some of the information requested seeks confidential information and trade secrets from a competitor and is improper. Further, Sorin argues that Biotronik, Inc. U.S. is the proper source of the OEM related information sought in the subpoenas duces tecum. However, Biotronik Inc. U.S. takes the position that all OEM related source documents as well as the OEM agreements themselves are with Biotronik Germany, not Biotronik, Inc. U.S., and that as a practical matter, it does not even have possession of copies of the operative Sorin OEM agreements because those agreements are with Biotronik Germany. This argument by Biotronik, Inc. U.S. seems to have been raised before Magistrate Judge Simonton in the United States District Court for the Southern District of Florida - Miami Division during a discovery hearing in the main action <u>JMA, Inc., a Florida corporation et al. v. Biotronik, Inc.</u>, case no. 12-cv-23466-Seitz/Simonton on February 5, 2014. During this hearing, Magistrate Judge Simonton found "...the agreements with

10

competitors to sell these leads is the heart of this lawsuit, and the evidence is clearly relevant." See exhibit 3 attached to the reply (docket no. 13). Moreover, Magistrate Judge Simonton warned Biotronik Inc. U.S. as follows:

> "...I hope we're not back here on a, you know, on a refusal of the German companies to cooperate and produce documents because they did involve the American company in this and in the American company that's sort of on the hook..." See exhibit 3 attached to the reply (docket no. 13).

7. That the information requested in the subpoenas duces tecum (docket nos. 1-1 and 1-2) is information that goes to the heart of the underlying lawsuit and is discoverable, relevant and necessary to the claims at issue in the underlying lawsuit and is reasonably calculated to lead to the discovery of admissible evidence. Even if some of the information requested in the subpoenas duces tecum (docket nos. 1-1 and 1-2) is confidential and/or trade secret, it is still discoverable and can be adequately protected by the district court in the Southern District of Florida through the Protective Order that has been entered in that court. That such information requested in the subpoenas duces tecum (docket nos. 1-1 and 1-2) is not available from Biotronik, Inc. U.S. based upon the position taken of Biotronik, Inc. U.S. as outlined above. This court has not been

11

provided by any of the parties with any further ORDERS by either District Judge Seitz or Magistrate Judge Simonton compelling Biotronik Inc. U.S. to produce the requested and needed information as outlined in the subpoenas duces tecum (docket nos. 1-1 and 1-2).  In addition, Magistrate Judge Simonton, at the February 5, 2014 hearing in the United States District Court for the Southern District of Florida - Miami Division during a discovery hearing in the main action <u>JMA, Inc., a Florida corporation et al. v. Biotronik, Inc.</u>, case no. 12-cv-23466-Seitz/Simonton, *in essence*, found that such information that is being sought through these two subpoenas duces tecum (docket nos. 1-1 and 1-2) go to the heart of the underlying lawsuit and is relevant.  Moreover, such information, including any confidential or trade secret information, will be adequately protected since the district court in the Southern District of Florida has entered a Protective Order pursuant to Fed. R. Civ. P. 26(c) which contains an "Attorney's Eyes Only" provision. Lastly, I find that the subpoenas duces tecum (docket nos. 1-1 and 1-2) are not unduly burdensome, noting that St. Jude has agreed to limit the time frame and geographical scope of the information sought as outlined in paragraph 5 above.

## ORDER

WHEREFORE, based upon these findings of fact and conclusions of law this court ORDERS:

1. That Plaintiff St. Jude Medical S.C. Inc.'s Motion to Compel Production of Documents Responsive to Subpoenas (docket no. 1) is GRANTED.  That Sorin CRM USA, Inc. and Sorin Group USA, Inc. shall respond fully to the subpoenas duce tecum (docket nos. 1-1 and 1-2) and provide such information requested, within the time frame and geographic scope outlined in paragraph 5 above, to Plaintiff St. Jude Medical S.C., Inc. on or before April 30, 2014;

2. That each party shall pay their own attorney fees and costs for the subject motion (docket no. 1) since the court finds that under the facts and circumstances of this case, it would be unjust to award any expenses; and

3. That the Protective Order which contains an "Attorney Eyes Only" provision that was previously entered in the main action <u>JMA, Inc., a Florida corporation et al. v. Biotronik, Inc.</u>, case no. 12-cv-23466-Seitz/Simonton shall apply to all information disclosed under the subpoenas duces tecum (docket nos. 1-1 and 1-2).

Date: March 19, 2014          s/ Michael J. Watanabe
      Denver, Colorado        Michael J. Watanabe
                              United States Magistrate Judge